IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SHANNON MEGGS, BRANDY L. MILLER, DENISE O. WEIR, AND LEANNE N. COMBS,<br><br>      **Plaintiffs,**<br><br>    **vs.**<br><br>GOOSEBUMPS, INC., BRUCE DOBBS, GEORGE KELLY AND MARK STEVENS, Sr.,<br><br>      **Defendants.** | Civil Action No. _____<br><br><br>Jury Trial Demanded |

# COMPLAINT

Plaintiffs Shannon Meggs ("Meggs"), Brandy L. Miller ("Miller"), Denise O. Weir ("Weir"), and Leanne N. Combs ("Combs") (collectively "Plaintiffs"), individually and on behalf of all others similarly situated who consent to their inclusion in a collective action, bring this Complaint against Goosebumps, Inc. ("Goosebumps") and Bruce Dobbs ("Dobbs"), George Kelly ("Kelly") and Mark Stevens, Sr. ("Stevens") (collectively "Defendants"), and shows the Court as follows:

### *Introduction*

### 1.

This is a wage and hour case. At all times relevant to this action, Defendants owned and operated an adult nightclub in Atlanta under the trade name "Goosebumps".  Defendants employed Plaintiffs as dancers and entertainers. Defendants misclassified Plaintiffs as independent contractors; failed to pay Plaintiffs minimum wages as set in accordance with the FLSA; required Plaintiffs to kickback tips to Defendants and others for Defendants benefit; and failed to pay Plaintiffs an overtime premium for work in excess of forty (40) hours in a week.

### *Jurisdiction and Venue*

### 2.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA § 16(b), 29 U.S.C. § 216(b), 28 U.S.C. § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

### 3.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Goosebumps's principal place of business is located in this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

### *The Parties*

4.

Meggs resides in DeKalb County, Georgia.

5.

On July 9, 2017, Meggs filed a Consent to Opt-In in the matter of *Jackson, et al, v. Goosebumps, et al,* 1:17-cv-02669-SCJ.  [Dkt. 3-1 in that matter]

6.

Miller resides in Fulton County, Georgia.

7.

On March 12, 2018, Miller filed a Consent to Opt-In in the matter of *Jackson, et al, v. Goosebumps, et al,* 1:17-cv-02669-SCJ.  [Dkt. 35-1 in that matter]

8.

Weir resides in DeKalb County, Georgia.

9.

On March 12, 2018, Weir filed a Consent to Opt-In in the matter of *Jackson, et al, v. Goosebumps, et al,* 1:17-cv-02669-SCJ.  [Dkt. 35-2 in that matter]

10.

Combs resides in DeKalb County, Georgia.

11.

On March 12, 2018, Combs filed a Consent to Opt-In in the matter of *Jackson, et al, v. Goosebumps, et al,* 1:17-cv-02669-SCJ.  [Dkt. 35-3 in that matter]

12.

At all times material hereto, Defendants have operated a nightclub known as "Goosebumps" whose principal place of business is located at 134 Baker Street, Atlanta, Georgia.

13.

Goosebumps is a domestic profit corporation organized under the laws of the State of Georgia.

14.

Goosebumps can be served via its registered agent Alan Begner, Esq., 5180 Roswell Road, N.E., South Building, Suite 100, Sandy Springs, Georgia 30328.

15.

Goosebumps is subject to the personal jurisdiction of this Court.

16.

Dobbs is a resident of DeKalb County, Georgia.

17.

Dobbs is subject to the personal jurisdiction of this Court.

18.

Dobbs is the CEO, CFO, and Secretary of Goosebumps.

19.

Dobbs can be served with process at his residence at 4070 Kings Causeway, Ellenwood, Georgia 30294 or wherever he can be found.

20.

Kelly is a resident of Cobb County, Georgia.

21.

Kelly is subject to the personal jurisdiction of this Court.

22.

Kelly is a manager or supervisor at Goosebumps.

23.

Kelly can be served with process at his residence located at 5284 Floyd Road, #579, Mableton, Georgia 30126 or wherever he can be found.

24.

Stevens is a resident of Fulton County, Georgia.

25.

Stevens is subject to the personal jurisdiction of this Court.

26.

Stevens is a manager or supervisor at Goosebumps.

27.

Stevens can be served with process at his residence located at 3270 Nancy Creek Road, NW, Atlanta, Georgia 30327 or wherever he can be found.

### *Enterprise Coverage*

28.

During the three years prior to the filing Plaintiff Meggs' Consent to Opt-In the matter of *Jackson, et al, v. Goosebumps, et al*, 1:17-cv-02669-SCJ through the initiation of the instant civil action (hereinafter "the Relevant Time Period"), Goosebumps, Inc. ("the Club") has been an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

29.

At all times during the Relevant Time Period, the Club provided entertainment in the form of nude female dancers.

30.

During 2014, the Club had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

31.

During 2015, the Club had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

32.

During 2016, the Club had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

33.

During 2017, the Club had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

34.

During 2018, the Club had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

35.

At all times during the Relevant Time Period, the Club was an enterprise engaging in interstate commerce by among other things, regularly selling alcoholic beverages that were produced and shipped from outside of the State of Georgia, regularly serving foods that were produced and shipped from outside of the State of Georgia, and regularly processing out-of-state credit card sales in the furtherance of its business.

36.

During 2014, the Club had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

37.

During 2015, the Club had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

38.

During 2016, the Club had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

39.

During 2017, the Club had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

40.

At all times during the Relevant Time Period, the Club had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

41.

At all times material hereto, Goosebumps has been an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

***Statutory Employer Allegations***

42.

At all times material hereto, Goosebumps was an "employer" of Plaintiffs as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

43.

At all times material hereto, Plaintiffs were "employees" of Goosebumps as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

44.

At all times material hereto, Dobbs exercised control over the work activities of Plaintiffs.

45.

At all times material hereto, Dobbs was involved in the day-to-day operation of Goosebumps.

46.

At all times material hereto, Goosebumps vested Dobbs with supervisory authority over Plaintiffs.

47.

At all times material hereto, Dobbs exercised supervisory authority over Plaintiffs.

48.

At all times material hereto, Dobbs scheduled Plaintiffs' working hours or supervised the scheduling of Plaintiffs' working hours.

49.

At all times material hereto, Dobbs exercised authority and supervision over Plaintiffs' compensation.

50.

At all times material hereto, Dobbs was an "employer" of Plaintiffs as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

51.

At all times material hereto, Plaintiffs were "employees" of Dobbs as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

52.

At all times material hereto, Kelly exercised control over the work activities of Plaintiffs.

53.

At all times material hereto, Kelly was involved in the day-to-day operation of Goosebumps.

54.

At all times material hereto, Goosebumps vested Kelly with supervisory authority over Plaintiffs.

55.

At all times material hereto, Kelly exercised supervisory authority over Plaintiffs.

56.

At all times material hereto, Kelly scheduled Plaintiffs' working hours or supervised the scheduling of Plaintiffs' working hours.

57.

At all times material hereto, Kelly exercised authority and supervision over Plaintiffs' compensation.

58.

At all times material hereto, Kelly was an "employer" of Plaintiffs as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

59.

At all times material hereto, Plaintiffs were "employees" of Kelly as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

60.

At all times material hereto, Stevens exercised control over the work activities of Plaintiffs.

61.

At all times material hereto, Stevens was involved in the day-to-day operation of Goosebumps.

62.

At all times material hereto, Goosebumps vested Stevens with supervisory authority over Plaintiffs.

63.

At all times material hereto, Stevens exercised supervisory authority over Plaintiffs.

64.

At all times material hereto, Stevens scheduled Plaintiffs' working hours or supervised the scheduling of Plaintiffs' working hours.

65.

At all times material hereto, Stevens exercised authority and supervision over Plaintiffs' compensation.

66.

At all times material hereto, Stevens was an "employer" of Plaintiffs as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

67.

At all times material hereto, Plaintiffs were "employees" of Stevens as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

68.

At all times during the Relevant Time Period, the Club directly and indirectly controlled its dancers' work schedules.

69.

At all times during the Relevant Time Period, the Club's managers exercised the authority to require dancers to change their attire.

70.

At all times during the Relevant Time Period, the Club's managers exercised the authority to require dancers to change their hairstyle.

71.

At all times during the Relevant Time Period, the Club's managers exercised the authority to require dancers to change their makeup**.**

72.

At all times during the Relevant Time Period, the Club's managers exercised the authority to impose discipline upon its dancers, including warnings, suspensions, and terminations.

73.

At all times during the Relevant Time Period, the Club's managers supervised dancers on a day-to-day basis.

74.

At all times during the Relevant Time Period, the Club paid all costs associated with advertising, marketing, and promoting the Club.

75.

At all times during the Relevant Time Period, the Club's managers exercised the authority to prohibit a dancer from performing for any reason.

76.

At all times during the Relevant Time Period, the Club employed a disc jockey ("the DJ") who operated the club's music and made announcements to customers and dancers.

77.

At all times during the Relevant Time Period, the Club enforced a mandatory check-out process to its dancers.

78.

At all times during the Relevant Time Period, the Club provided a dressing room for its dancers.

79.

At all times during the Relevant Time Period, the Club posted notices and work rules for its dancers in its dressing room.

80.

At all times during the Relevant Time Period, the Club's managers enforced its work rules and policies as they applied to dancers.

81.

At all times during the Relevant Time Period, the Club did not require its dancers have nude dancing experience or training prior to hire.

82.

At all times during the Relevant Time Period, the Club advertised its business on the internet.

83.

At all times during the Relevant Time Period, such advertisements included photographs of women in provocative apparel.

84.

At all times during the Relevant Time Period, nude female dancing was an integral part of the Club's business.

85.

At all times during the Relevant Time Period, as a matter of economic reality Plaintiffs were "employees" as that term is used in the FLSA, rather than independent contractors.

86.

At all times during the Relevant Time Period, Defendants were Plaintiffs' "employers" as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

87.

At all times during the Relevant Time Period, Defendants classified Plaintiffs and other dancers as independent contractors.

88.

At all times during the Relevant Time Period, Defendants misclassified Plaintiffs and other dancers as independent contractors.

### ADDITIONAL FACTUAL ALLEGATIONS

89.

Defendants employed Meggs as a dancer from approximately February 1997 until April 29, 2017.

90.

During the Relevant Time Period, Meggs normally worked 4-5 days per week.

91.

During the Relevant Time Period, Meggs normally worked 7-10 hours during each weekday work shift.

92.

During the Relevant Time Period, Meggs normally worked a double shift on Saturdays and worked 10-15 hours on those days.

93.

Defendants employed Miller as a dancer from approximately May 2004 until February 10, 2018.

94.

During the Relevant Time Period, Miller normally worked 6 days per week.

95.

During the Relevant Time Period, Miller normally worked 9 hours during each work shift.

96.

Defendants employed Weir as a dancer from approximately August 2004 until February 10, 2018.

97.

During the Relevant Time Period, Weir normally worked 6 days per week.

98.

During the Relevant Time Period, Weir normally worked 9-11 hours during each work shift.

99.

Defendants employed Combs as a dancer from approximately June 2001 until February 10, 2018.

100.

During the Relevant Time Period, Combs normally worked 6 days per week.

101.

During the Relevant Time Period, Combs normally worked 11 hours during each work shift.

102.

At all times material hereto, Goosebumps did not employ Plaintiffs in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

103.

At all times material hereto, Goosebumps did not employ Plaintiffs in a bona fide administrative capacity within the meaning of 29 USC § 213 (a).

104.

At all times material hereto, Goosebumps did not employ Plaintiffs in a bona fide executive capacity within the meaning of 29 USC § 213 (a).

105.

At all times material hereto, Goosebumps did not employ Plaintiffs in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a).

106.

At all times during the Relevant Time Period, Plaintiffs were not exempt from the minimum wage requirements of the FLSA by reason of any exemption.

107.

At all times material hereto, Plaintiffs were not exempt from the maximum hours requirements of the FLSA by reason of any exemption.

108.

At all times during the Relevant Time Period, Defendants failed to pay Plaintiffs any wages or compensation whatsoever.

109.

At all times during the Relevant Time Period, Plaintiffs' sole form of remuneration was the receipt of tips from Defendants' customers.

110.

At all times material hereto, in conjunction with each shift Plaintiffs worked, Defendants required them to pay a portion of their tips as "fees" to the Club and its owners, agents, and employees.

111.

At all times material hereto, Defendants required Plaintiffs to pay a "tip-out" to the DJ of $5.00 or $10.00 in conjunction with each shift Plaintiffs worked.

112.

At all times material hereto, Defendants required its dancers to pay them amounts ranging from $10.00 to $85.00, in conjunction with each shift Plaintiffs worked.

113.

At all times during the Relevant Time Period, Plaintiff Meggs regularly paid Defendants approximately $65.00-$85.00 in total fees during each work shift.

114.

At all times during the Relevant Time Period, Plaintiff Miller regularly paid Defendants approximately $40.00-$60.00 in total fees during each work shift.

115.

At all times during the Relevant Time Period, Plaintiff Weir regularly paid Defendants approximately $40.00-$60.00 in total fees during each work shift.

116.

At all times during the Relevant Time Period, Plaintiff Combs regularly paid Defendants approximately $40.00-$60.00 in total fees during each work shift.

117.

Defendants knew or should have known that the FLSA applied to Plaintiffs and the class they represent.

118.

During the Relevant Period, Defendants failed to compensate Plaintiffs and each member of the collective they seek to represent at a rate of $7.25 per hour for each hour they worked.

119.

At all times material hereto, Plaintiffs and other Goosebumps dancers regularly worked more than 40 hours per week.

120.

During the Relevant Time Period, Defendants failed to pay their dancers, including Plaintiffs, at one-and-one-half times their regular rates for work performed in excess of 40 hours in a workweek.

## COUNT I - FAILURE TO PAY MINIMUM WAGE

121.

The allegations in all previous paragraphs are incorporated by reference as if fully set out herein.

122.

At all times material hereto, Plaintiffs were employees covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

123.

At all times material hereto, Defendants failed to compensate Plaintiffs at an hourly rate above or equal to the minimum wage.

124.

At all times material hereto, Defendants willfully failed to compensate Plaintiffs at an hourly rate above or equal to the FLSA minimum wage.

125.

Plaintiffs are entitled to payment of minimum wages by Defendants, jointly and severally, in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

126.

Defendants' mandate that Plaintiffs pay fees to the Club and its managers, and other employees violated the "free and clear" requirement set forth in 29 CFR 531.35.

127.

Plaintiffs are entitled to recover from Defendants, jointly and severally, all fees and fines that the Club required them to pay as a condition of employment.

128.

As a result of Defendants' willful underpayment of minimum wages as alleged above, Plaintiffs are entitled to an award of liquidated damages from Defendants, jointly and severally, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

129.

As a result of its underpayment of minimum wages as alleged above, Defendants are jointly and severally liable to Plaintiffs for their costs of litigation, including their reasonable attorney's fees, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

## COUNT II - FAILURE TO PAY OVERTIME

130.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

131.

At all times material hereto, Plaintiffs were employees covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

132.

During their respective employment with Defendants, Plaintiffs regularly worked in excess of 40 hours each week.

133.

Defendants failed to pay Plaintiffs at one-and-one-half times their regular rate for work in excess of 40 hours in any week during the entire period of their employment.

134.

Plaintiffs are entitled to payment of overtime wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

135.

As a result of the underpayment of overtime compensation as alleged above, Plaintiffs are entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

136.

As a result of the underpayment of overtime compensation as alleged above, Plaintiffs are entitled to their litigation costs, including their reasonable attorney's fees, in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

WHEREFORE, Plaintiffs respectfully pray:

1. That Plaintiffs' claims be tried before a jury;

2. That Plaintiffs be awarded an amount to be determined at trial against Defendants in unpaid minimum wages due under the FLSA, plus an additional like amount in liquidated damages;

3.      That Plaintiffs be awarded an amount to be determined at trial against

Defendants in unpaid overtime wages due under the FLSA, plus an

additional like amount in liquidated damages;

4.      That Plaintiffs be awarded their costs of litigation, including their reasonable

attorneys' fees from Defendants;

5.      For such other and further relief as the Court deems just and proper.


Respectfully submitted,

| | |
|---|---|
| 3100 Centennial Tower | **DELONG CALDWELL BRIDGERS** |
| 101 Marietta Street | **FITZPATRICK & BENJAMIN, LLC** |
| Atlanta, Georgia 30303 | |
| (404) 979-3171 | */s/Charles R. Bridgers* |
| (404) 979-3170 (f) | Charles R. Bridgers |
| charlesbridgers@dcbflegal.com | Ga. Bar No. 080791 |
| kevin.fitzpatrick@dcbflegal.com | Kevin D. Fitzpatrick, Jr. |
| | Ga. Bar No. 262375 |
| | |
| | **Counsel for Plaintiffs** |